FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 1 2 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

KELLY M. LYONS,

        Plaintiff,

    – against –

RIENZI & SONS, INC.,

        Defendant.

---

RIENZI & SONS, INC.,

        Third-Party Plaintiff,

    – against –

STATEN ISLAND YACHT SALES, INC.,
GENMAR YACHT GROUP LLC, f/d/b/a CARVER
BOAT CORPORATION LLC, MARQUIS
YACHTS, LLC, CARVER BOAT CORPORATION
LLC, DONALD L. BLOUNT & ASSOCIATES,
NUVOLARI-LENARD NAVAL DESIGN, and
DOES 1 through 5,

        Third-Party Defendants.

---

**MEMORANDUM
AND ORDER**

09-CV-4253

**Appearances:**

For the Plaintiff:

Paul T. Hofmann
Hofmann & Schweitzer
New York, NY

For the Third-Party Plaintiff:

John F. Karpousis
Susan Lee

1

Freehill, Hogan & Mahar LLP
New York, NY

For Third-Party Defendant Marquis Yachts, LLC:

Jeffrey D. Smith
Varnum LLP
Kalamazoo, MI

**JACK B. WEINSTEIN, Senior United States District Judge:**

**Table of Contents**

I.     Introduction .................................................................................................... 3
II.    Facts and Procedural History ......................................................................... 5
   A.   The Manufacture of the *Brianna*, Her Purchase by Rienzi, and Her Warranty ............... 5
   B.   The Bankruptcy of Genmar and the Creation of Marquis ................................................ 6
   C.   The Approval Order and the Asset Purchase .................................................................... 7
   D.   Subsequent Bankruptcy Proceedings and Relief from the Automatic Stay ................. 10
   E.   Hearing on Motion for Summary Judgment ................................................................... 11
III.   Law ............................................................................................................... 11
   A.   Summary Judgment Standard ........................................................................................ 11
   B.   Choice of Law ................................................................................................................ 12
   C.   Successor Liability ......................................................................................................... 14
      1.   Effect of Bankruptcy Sale Order on Successor Liability ........................................... 14
      2.   Common-Law Background .......................................................................................... 15
      3.   The Jones Act, FELA, and Successor Liability: Federal Common Law ..................... 15
      4.   Admiralty Claims and Federal Common Law ............................................................. 16
   D.   Enforcement of Forum Selection Clauses ..................................................................... 17
IV.    Application of Law to Facts .......................................................................... 17
   A.   Preliminary Considerations ........................................................................................... 17
   B.   Direct Liability ............................................................................................................... 18
   C.   Successor Liability of Marquis ...................................................................................... 19
      1.   Effect of Limited Relief from Stay on the Approval Order ....................................... 19
      2.   Successor Liability: Federal Common Law and New York Law ................................ 20

V.    Conclusion on Motion for Summary Judgment.................................................................. 22

VI.   Future Proceedings............................................................................................................ 22

## I.    Introduction

Plaintiff, a seafarer, was allegedly injured when he slipped and fell on the deck of the

yacht on which he was working. He contends that the cause was a design defect—a slippery

surface. He sued the vessel's owner, who claimed against other defendants; plaintiff later added

his own claims against the same third-party defendants. They include the manufacturer and the

intermediate seller of the yacht.

Raised in this seemingly simple tort case are a variety of areas of procedural and

substantive law, including admiralty, insurance, the federal statute intended to protect seafarers,

bankruptcy, the state and federal common law of products liability and successor responsibility,

and conflict of laws—a veritable jurisprudential bouillabaisse. A central consideration is the

overriding national policy requiring the compensation of workers aboard vessels for injuries

suffered during the course of their employment.

This memorandum and order should be read in conjunction with the order granting, for

lack of personal jurisdiction, the motion to dismiss of third-party defendant Nuvolari-Lenard

Naval Design. *See* Memorandum and Order, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253

(E.D.N.Y. Apr. 11, 2012), CM/ECF No. 133.

Kelly Lyons sued defendant Rienzi & Sons, Inc. ("Rienzi"), alleging that he was

employed by Rienzi as the skipper and sole deckhand of a yacht—the *Brianna*—owned by

defendant, and that, in August 2008, he was injured after slipping and falling while working

aboard the vessel. *See* Photographs of Yacht, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253

(E.D.N.Y. Apr. 3, 2012), CM/ECF No. 130-5; *see also* Ex. B (showing the portion of the yacht
where plaintiff allegedly fell).

Lyons contends that his injuries are attributable to Rienzi's negligence. Asserted is a
claim brought pursuant to the Jones Act, 46 U.S.C. § 30104 *et seq.* Lyons also presses claims for
maintenance and cure pursuant to general maritime law. *See* Complaint, Lyons v. Rienzi &
Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Oct. 2, 2009), CM/ECF No. 1.

Rienzi later brought a third-party complaint pursuant to Rule 14 of the Federal Rules of
Civil Procedure against the manufacturer, the intermediate seller, and the designer of the
*Brianna*, as well as third-party defendant and present movant Marquis Yachts, LLC ("Marquis"),
an alleged successor to the manufacturer. Rienzi asserted various product liability claims against
Marquis in its third-party complaint, contending that if it were held to be liable to Lyons, the
third-party defendants, including Marquis, should be required to contribute to any judgment
against it or to indemnify it entirely. *See* Third-Party Complaint, Lyons v. Rienzi & Sons, Inc.,
No. 09-CV-4253 (E.D.N.Y. Jan. 14, 2011), CM/ECF No. 14. Lyons, the original plaintiff, then
brought his own claims against the third-party defendants. *See* Plaintiff's Rule 14(a) Claims
Against Third-Party Defendants, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. June
10, 2011), CM/ECF No. 42; *see also* Fed. R. Civ. P. 14(c) (impleader of admiralty or maritime
claims); *Burke v. Quick Lift, Inc.*, 464 F. Supp. 2d 150, 161 n.10 (E.D.N.Y. 2006).

Jurisdiction over Lyons' Jones Act claim is exercised pursuant to 28 U.S.C. § 1331; his
complaint includes a jury trial demand. *See, e.g., O'Donnell v. Great Lakes Dredge & Dock Co.*,
318 U.S. 36, 43 (1943); *Holloway v. Pagan River Dockside Seafood*, 669 F.3d 448, 451 (4th Cir.
2012). Jurisdiction over Lyons' claims for maintenance and cure, and Rienzi's third-party

4

claims, is exercised pursuant to 28 U.S.C. § 1367. *See Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 380-81 (1959).

Marquis filed the present motion for summary judgment in February 2012, seeking dismissal of the claims of Lyons and Rienzi. It contends that any claims asserted against it directly should be dismissed since it was not the designer, seller, or manufacturer of the *Brianna*; it also argues that it should not be held liable as a successor to the vessel's manufacturer, since it did not assume the liability asserted against it when it purchased the manufacturer's assets.

For the reasons stated below, the motion for summary judgment is granted.

## II.    Facts and Procedural History

### A. The Manufacture of the *Brianna*, Her Purchase by Rienzi, and Her Warranty

The *Brianna* was built in Wisconsin in February 2006 by third-party defendant Genmar Yacht Group, LLC ("Genmar"), formerly known as Carver Boat Corporation, LLC. *See* Rule 56.1 Statement of Third-Party Defendant Marquis Yachts, LLC ("Marquis 56.1 Stmt.") ¶¶ 9-10, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Feb. 6, 2012), CM/ECF No. 101-1; Dep. of Michael Rienzi ("M. Rienzi Dep.") 15, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Feb. 6, 2012), CM/ECF No. 101-8. Third-party defendant Staten Island Yacht Sales, Inc. ("Staten Island"), a New York corporation, purchased the vessel from Genmar; Rienzi then purchased the *Brianna* from Staten Island. *See* M. Rienzi Dep. 13-14. The *Brianna* was delivered to Rienzi by Staten Island in New York in May 2006. *See* Marquis 56.1 Stmt. ¶ 12; M. Rienzi Dep. 15.

The *Brianna*'s limited warranty—registered by Rienzi with Staten Island in June 2006—purported to provide Rienzi with a number of narrow rights against the vessel's manufacturer; it stated that the yacht would "be free from defects in material and workmanship." *See* Limited Warranty for New 2006 Model Year Marquis Yachts, Lyons v. Rienzi & Sons, Inc., No. 09-CV-

5

4253 (E.D.N.Y. Mar. 19, 2012), CM/ECF No. 114-1. The warranty did not extend to design defects for slippery work surfaces. *See id.*

The document's forum selection clause purported to limit Rienzi's ability to bring an action "under or relating to" the limited warranty, or for the breach of any implied warranty. It stated that any action by Rienzi for breach of warranty was required to be brought in the Circuit Court for Brown County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin. *See id.* ¶ 7.

## B. The Bankruptcy of Genmar and the Creation of Marquis

In June 2009, Genmar—along with its parent company, Genmar Holdings, Inc., and a number of affiliated companies—filed for bankruptcy in the United States Bankruptcy Court for the District of Minnesota. The cases were consolidated for efficient administration. *See* Marquis 56.1 Stmt. ¶ 16; Defendant and Third-Party Plaintiff's Counter-Statement of Material Facts ("Rienzi 56.1 Stmt.") ¶ 2, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Mar. 19, 2012), CM/ECF No. 115; Notice of Bankruptcy Case Filing, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Feb. 6, 2012), CM/ECF No. 101-4. In November 2009, the parent company, accompanied by various debtors, filed a motion seeking approval to sell substantially all of Genmar's assets at a competitive auction pursuant to 11 U.S.C. § 363(f). *See* Rienzi 56.1 Stmt. ¶ 5. That motion was granted by the bankruptcy court in December 2009. *See id.* ¶ 6.

Notice of the auction was published in two newspapers in December 2009; it was held the following month. *See id.* ¶ 7. Irwin Jacobs, the founder, principal shareholder, and former CEO of Genmar's parent, participated in the auction; he bid on behalf of J&D Acquisitions, LLC ("J&D Acquisitions"), a company that he had founded with another individual in December 2009. *See id.* J&D Acquisitions had been formed to bid on a number of the parent company's

6

assets, including those of Genmar. *See* Aff. of Larry H. Volz ("Volz Aff.") ¶ 6, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Feb. 6, 2012), CM/ECF No. 101-2.

J&D Acquisition's bid for Genmar's assets was successful. *See* Rienzi 56.1 Stmt. ¶ 8; *see also* Debtors' Report on the Auction Sale ¶ 4B, In re Genmar Holdings, Inc., No. 09-43537 (Bankr. D. Minn. Jan 11, 2010), CM/ECF No. 662. Shortly after J&D Acquisitions was declared by the debtors to be the winner of the auction, an affiliated company, Carver Acquisition, LLC ("Carver Acquisition"), was formed pursuant to Minnesota law. *See* Certificate of Organization, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Feb. 6, 2012), CM/ECF No. 101-3. Carver Acquisition then amended its articles of incorporation; its name was changed to Marquis Yachts, LLC. *See* Amendment of Articles of Organization, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Feb. 6, 2012), CM/ECF No. 101-3.

## C. The Approval Order and the Asset Purchase

Overruling objections raised by the unsecured creditors committee, *see* Objection to Motion for Orders ¶¶ 10-12, 16-24, In re Genmar Holdings, Inc., No. 09-43537 (Bankr. D. Minn. Jan 11, 2010), CM/ECF No. 656, the bankruptcy court in mid-January 2010 issued an order, pursuant to 11 U.S.C. § 363(f), approving both the sale and the proposed asset purchase agreement that had been submitted by various Genmar companies, Carver Acquisition, and J&D Acquisitions. *See* Rienzi 56.1 Stmt. ¶ 9; Order Authorizing Debtors to Sell Assets Free and Clear of Liens, Claims, Interests and Encumbrances to Buyer in Accordance with Asset Purchase Agreement ("Approval Order"), Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Feb. 6, 2012), CM/ECF No. 101-5.

Numerous findings of fact and conclusions of law were made in the bankruptcy court's Approval Order. All parties in interest, the court concluded, had been given a reasonable

opportunity to object and to be heard regarding the sale. *See* Approval Order ¶¶ I, K. The court found that the auction process utilized was fair, that Mr. Jacobs' status as an "insider," *see* 11 U.S.C. § 101(31)(B), had been fully disclosed, and that the proposed asset purchase agreement constituted the highest and best offer for the assets that were to be sold. *See* Approval Order ¶¶ L-N. No other person, entity, or group of entities, the court stated, had made a better offer—that is, one of greater economic value—to purchase the assets. *Id.* ¶ O. The consideration provided by J&D Acquisitions and its affiliates, the court concluded, exceeded the liquidation value of the purchased assets; the court further determined that the sale of the assets in accordance with the Approval Order was in the best interest of all parties in interest. *See id.* ¶ P.

Adopted by the bankruptcy court were a number of conclusions relevant to J&D Acquisitions' liabilities—and those of its affiliates—as a result of the sale. The court expressly found that the proposed transactions contemplated by the asset purchase agreement were not to be entered into for the purpose of effectuating a fraudulent conveyance. *See id.* ¶ Q. The debtors, the court concluded, were authorized to sell the assets free and clear of liens, claims, encumbrances, and interests, pursuant to 11 U.S.C. § 363(f). *See id.* ¶ T. Except for certain expressly assumed liabilities (none of which related to claims in the present case), the court stated that the transfer of the acquired assets would not subject J&D Acquisitions and its affiliates to any lien, claim, encumbrance or interest, including tort claims. *See id.* ¶ U; *see also id.* ¶¶ AA, FF. The court determined that the transactions contemplated by the asset purchase agreement would not be consummated but for J&D Acquisitions' and its affiliates' ability to purchase the assets free and clear of liens, claims, encumbrances, and interests "*including*, but not limited to, *successor liability*." *Id.* ¶ W (emphasis added). And the court expressly found

8

that neither J&D Acquisitions nor its affiliates were to be deemed successors to Genmar, stating

that:

> *Neither the Buyer nor its affiliates shall be deemed*, as a result of any action taken in connection with the purchase of the Acquired Assets, to: (1) be a *successor* (or other such similarly situated party) *to any of the Debtors* (other than with respect to the Assumed Liabilities as expressly stated in the [asset purchase agreement]; (2) have, *de facto* or otherwise, merged with or into any of the Debtors; (3) be a mere continuation of the Debtors or their estates (and there is no continuity of enterprise between the Buyer and the Debtors); or (4) be holding itself out to the public as a continuation of the Debtors. The Buyer is not acquiring or assuming any liability, warranty or other obligation of the Debtors, except as expressly set forth in the [asset purchase agreement] with respect to the Assumed Liabilities.

*Id.* ¶ GG (emphases added; "*de facto*" italicized in original).

The Approval Order included a comprehensive provision that purported to transfer the

acquired assets "free and clear" of all claims and causes of action that might have been asserted

against Genmar. *See id.* ¶ 9. The Bankruptcy Code defines "claim" in relevant part to mean a

"right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated,

fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or

unsecured." 11 U.S.C. § 101(5)(A).

The bankruptcy court also stated expressly that the transfer of the acquired assets

pursuant to the Approval Order would

> *not subject the Buyer to any liability* with respect to any obligations incurred in connection with, or in any way related to the Acquired Assets, prior to the date of the Closing . . . based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, *any theory of equitable subordination or successor or transferee liability*.

*Id.* ¶ 11 (emphasis added).

The asset purchase agreement was signed shortly after issuance of the Approval Order.

Mr. Jacobs, representing J&D Acquisitions and its affiliates, executed the agreement in his

capacity as the buying company's chief executive officer. *See* Rienzi 56.1 Stmt. ¶ 10; Asset

9

Purchase Agreement, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Feb. 6, 2012), CM/ECF No. 101-5. J&D Acquisitions and its affiliates agreed to assume limited liabilities incurred by the sellers, as set forth in Section 1.3 and Schedule 1.3(c) of the agreement; included in the list of assumed liabilities were "[p]ost-petition dealer warranty claims." Asset Purchase Agreement Schedule 1.3(c); *see also* Rienzi 56.1 Stmt. ¶ 10.

## D. Subsequent Bankruptcy Proceedings and Relief from the Automatic Stay

Filed in March 2010 in the bankruptcy court by the Genmar entities was a motion seeking to be relieved of their obligations under a number of executory contracts, including a dealer agreement with Staten Island, and all warranty contracts. Rienzi 56.1 Stmt. ¶ 10. The motion was granted in late March 2010. *See id.* In November 2010, Genmar's Chapter 11 reorganization was converted into a Chapter 7 liquidation. *See id.* ¶ 12.

In early April 2011, Rienzi filed a proof of claim in Genmar's bankruptcy action. Attached as Rienzi's proof of claim was the third-party complaint that it filed in the present action. *See* Proof of Claim, In re Genmar Yacht Group, LLC, No. 09-43556 (Bankr. D. Minn. Apr. 7, 2011), Claims Register No. 510. In August 2011, Rienzi filed a motion with the bankruptcy court seeking relief from the statutorily-required automatic stay of litigation, *see* 11 U.S.C. § 362, so that it could proceed against Genmar in the United States District Court for the Eastern District of New York. *See* Rienzi 56.1 Stmt. ¶ 16.

In September 2011, the bankruptcy court partially lifted the stay, granting Lyons and Rienzi permission to continue the prosecution of the present action. *See* Order for Relief from Stay ¶ 2, In re Genmar Yacht Group, LLC, No. 09-43556 (Bankr. D. Minn. Apr. 7, 2011), CM/ECF No. 118. Lyons—the original plaintiff in this action—and Rienzi were authorized to continue the present litigation "to obtain a recovery based upon any settlement and/or judgment

10

entered in favor of either or both of them against [the third-party defendants in this case] *from proceeds of any applicable liability insurance*" policy or policies. *Id.* ¶ 2 (emphasis added). Lyons and Rienzi were prohibited, however, from recovering directly from Genmar. *See id.* The bankruptcy court's grant of relief from the automatic stay was recognized in the present case in December 2011, allowing the litigation against the third-party defendants to proceed. *See* Certification and Order of Limited Relief from Stay Under 11 U.S.C. § 362, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Dec. 13, 2011), CM/ECF No. 90.

### E. Hearing on Motion for Summary Judgment

Oral argument on Marquis' motion for summary judgment proceeded in April 2012. In response to questions propounded by the court, *see* Scheduling Order, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Apr. 3, 2012), CM/ECF No. 128, counsel for Marquis contended that the company is different in many respects than Genmar. *See* Transcript of April 10, 2012 Hearing ("Hr'g Tr.") 31-43. Based on the evidence now in the record and uncontested statements made at the hearing on the present motion, it is found as a fact that Marquis is a different company than Genmar. The ownership of the firms is different. Marquis manufactures some, but not all, of the boats that Genmar did. New contracts were negotiated with suppliers. Some of Genmar's workers were hired by Marquis, but the new company's staff is half the size of that of Genmar, and some new workers were hired. The new company never held itself out as a successor. The ownership, management, and operations of Marquis are substantially different than that of Genmar. *See* Hr'g Tr. 31-43. No convincing evidence contrary to these findings of fact is in the record.

A chronology summarizing the facts is attached as Exhibit A.

### III.   Law

#### A. Summary Judgment Standard

11

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see, e.g.*, *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999). It is warranted when, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Anderson*, 477 U.S. at 247-50, 255.

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Goenaga v. March of Dimes Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).

## B. Choice of Law

In federal question cases, federal courts generally apply a federal-law—as opposed to a state-law—choice of law analysis to determine which jurisdiction's substantive law is applicable. *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 12-15 (2d Cir. 1996); *see, e.g.*, *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 95-96 (2d Cir. 1999); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 795 (2d Cir. 1980). Federal choice of law rules require a court to "determine which . . . law to use by ascertaining and valuing points of contact between the transaction giving rise to the cause of action and the states or governments whose competing laws are involved." *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 162 (2d Cir. 1998) (internal quotation marks and

12

bracketing omitted). Federal courts frequently use the factors enunciated by the Restatement (Second) of Conflict of Laws in making this determination. *See Pescatore*, 97 F.3d at 12.

Since the claims in this case—with the exception of Lyons' Jones Act claim and Rienzi's claims for breach of express and implied warranty—are premised on injuries theoretically suffered at sea, the substantive law to be applied is admiralty or maritime law. *See, e.g.*, *Becker v. Poling Transp. Co.*, 356 F.3d 381, 388 (2d Cir. 2004); *Sundance Cruises Corp. v. Am. Bureau of Shipping*, 7 F.3d 1077, 1081 (2d Cir. 1993); *cf. Exxon Shipping Co. v. Baker*, 554 U.S. 471, 508 n.21 (2008); *E. River. S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 864-66 (1986). The federal common law of admiralty essentially tracks New York substantive law principles. *See, e.g.*, *Becker*, 356 F.3d at 388. The parties have agreed that the applicable maritime law doctrines in this case are identical to their New York counterparts. *See* Hr'g Tr. 47-48.

The breach of warranty claims are nonmaritime. *See, e.g.*, *The Ada*, 250 F. 194, 195 (2d Cir. 1918); *see also CTI-Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377, 380 n.4 (2d Cir. 1982); *Polestar Maritime Ltd. v. Nanjing Ocean Shipping Co.*, 631 F. Supp. 2d 304, 306-07 (S.D.N.Y. 2009). The parties assume that New York law applies to those claims. *Compare* Memorandum of Law in Support of Third Party Defendant Marquis Yacht, LLC's Renewed Motion for Summary Judgment 3-4, 9-10, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Feb. 6, 2012), CM/ECF No. 101-10, *with* Defendant and Third-Party Plaintiff's Memorandum in Opposition to Motion for Summary Judgment Filed by Third-Party Defendant Marquis Yachts LLC ("Rienzi Mem.") 10-11, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Mar. 19, 2012), CM/ECF No. 114. New York law will be applied to the breach of

13

warranty claims on consent. *See, e.g., Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d

Cir. 2009) (noting that implied consent is sufficient to establish choice of law).

### C. Successor Liability

#### 1. Effect of Bankruptcy Sale Order on Successor Liability

11 U.S.C. § 363(f) provides that a bankruptcy trustee "may sell property . . . free and

clear of any interest in such property of an entity other than the estate" if one of a number of

certain specified conditions are met. These are:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of
> such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is
> greater than the aggregate value of all liens on such property;
> (4) such interest is in a bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a
> money satisfaction of such interest.

11 U.S.C. § 363(f)(1)-(5).

Section 363(f) authorizes a bankruptcy court "to absolve the buyer [of a bankrupt estate's

assets] of *in personam* liability for *pre-confirmation* claims in a chapter 11 case." *In re*

*Grumman Olson Indus., Inc.*, 445 B.R. 243, 255 (Bankr. S.D.N.Y. 2011) (emphasis is original).

"Where the successor corporation purchases the assets of a bankrupt entity, it is appropriate to

look at the relevant purchase documents, and to consider the policies of the bankruptcy laws

when determining the successor liability issue. An asset purchase agreement that specifically

negates facts that might otherwise support successor liability is entitled to enforcement." *Doktor*

*v. Werner Co.*, 762 F. Supp. 2d 494, 498 (E.D.N.Y. 2011); *see also In re Chrysler LLC*, 576 F.3d

108, 124-26 (2d Cir. 2009), *vacated sub nom. on other grounds by Ind. State Police Pension*

*Trust v. Chrysler LLC*, 130 S. Ct. 1015 (2009) (mem.). A bankruptcy court's order approving

the sale of assets serves to "enjoin existing claimants' successor liability claims against the

14

purchaser pursuant to section 363(f)." *In re Motors Liquidation Co.*, 428 B.R. 43, 59 (Bankr. S.D.N.Y. 2010).

## 2. Common-Law Background

"The purchaser of the assets, as distinct from the stock, of a corporation generally does not acquire the seller's liabilities, even if all the assets are transferred by the sale so that in effect the entire business has been sold, and the purchaser intends to continue it as a going concern." *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 747 (7th Cir. 1994). Four exceptions have been recognized to help ameliorate potential inequity resulting from the common-law rule. A "corporation acquiring the assets of another corporation only takes on its liabilities if any of the following apply: the successor expressly or impliedly agrees to assume them; the transaction may be viewed as a de facto merger or consolidation; the successor is a mere continuation of the predecessor; or the transaction is fraudulent." *New York v. Nat'l Servs. Indus., Inc.*, 352 F.3d 682, 685 (2d Cir. 2003); *see, e.g., Schumacher v. Richards Shear Co.*, 451 N.E.2d 195, 198 (1983) (explaining that New York utilizes the traditional rule and its exceptions); John H. Matheson, *Successor Liability*, 96 Minn. L. Rev. 371, 383-94 (2011) (discussing each of the exceptions to the traditional rule).

## 3. The Jones Act, FELA, and Successor Liability: Federal Common Law

The Jones Act, 46 U.S.C. § 30104 *et seq.*, does not address directly the issue of successor liability. The statute provides in relevant part that:

> A seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recover for personal injury to, or death of, a railway employee apply to an action under this section.

46 U.S.C. § 30104.

15

The Supreme Court has "held that the Jones Act adopts 'the entire judicially developed doctrine of liability'" of the Federal Employers' Liability Act ("the FELA"), 45 U.S.C. § 51 *et seq.*, the federal law cross-referenced in 46 U.S.C. § 30104. *Am. Dredging Co. v. Miller*, 510 U.S. 443, 456 (1994) (quoting *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 439 (1958)); *see, e.g.*, *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 119 (2d Cir. 2010).

Federal courts have utilized their power to develop federal common law in interpreting and applying the FELA. *See Morant v. Long Island R.R.*, 66 F.3d 518, 522-23 (2d Cir. 1995); *see also Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 429 (1997); *Consol. R. Corp. v. Gottshall*, 512 U.S. 532, 558 (Souter, J., concurring) (noting that the federal courts' duty "in interpreting FELA" is "to develop a federal common law of negligence . . . , informed by reference to the evolving common law.").

The FELA is to be "liberally construed" to further Congress' remedial goal—that is, the equitable apportionment, as between workers and employers, of liabilities resulting from railroad accidents. *See Gottshall*, 512 U.S. at 542, 543. "[A]lthough common-law principles are not necessarily dispositive of questions arising under FELA, unless they are expressly rejected in the text of the statute, they are entitled to great weight in [a court's] analysis." *Id.* at 544. If the FELA is silent on a given issue, "common-law principles must play a significant role" in the fashioning of a federal common-law rule. *Id.* The FELA, like the Jones Act, does not directly address the question of successor liability.

### 4. Admiralty Claims and Federal Common Law

The "federal judiciary traditionally has had a more expansive role to play in the development of maritime law than in the development of non-maritime federal common law." *Senator Linie GMBH & Co. KG v. Sunway Line, Inc.*, 291 F.3d 145, 167 (2d Cir. 2002). The

16

Court of Appeals for the Second Circuit has concluded that the federal courts' "power to fashion

rules of federal common law" applicable to admiralty claims is "well established." *Chemung

Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 17 (2d Cir. 1991).

### D. Enforcement of Forum Selection Clauses

The Court of Appeals for the Second Circuit has set forth a four-part test to be used in

determining whether to dismiss a claim based on a contract's forum selection clause:

> The first inquiry is whether the clause was reasonably communicated to the party
> resisting enforcement. The second step requires us *to* classify *the clause as*
> mandatory or permissive, i.e., to decide whether the parties are *required* to bring
> any dispute to the designated forum or simply *permitted* do to so. Part three asks
> whether the claims and parties involved in the suit are subject to the forum
> selection clause.
>
> If the forum selection clause was communicated to the resisting party, has
> mandatory force and covers the claims and parties involved in the dispute, it is
> presumptively enforceable. The fourth, and final, step is to ascertain whether the
> resisting party has rebutted the presumption of enforceability by making a
> sufficiently strong showing that enforcement would be unreasonable or unjust, or
> that the clause was invalid for such reasons as fraud or overreaching.

*Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) (internal quotation marks and

citation omitted).

## IV.    Application of Law to Facts

### A. Preliminary Considerations

As an initial matter, it is not crystal clear from the summary judgment papers whether and

how Marquis—as opposed to J&D Acquisitions—acquired the Genmar assets relevant to this

case. *See* Volz Aff. ¶ 8 (noting that Marquis "was formed as a designated affiliate of J&D

Acquisitions, LLC to acquire and operate the Acquired Assets"); Rienzi 56.1 Stmt. ¶ 19 (stating

that "[f]ollowing the transfer of the assets, MARQUIS has continued the business of Genmar

Yacht, including production of the "Marquis Yachts" product line"). Marquis has not suggested

17

that it does not own the relevant assets or that it is an improper party in interest. The case will proceed on the assumption that Marquis is the proper party.

It need not be determined whether the bankruptcy court's Approval Order operates to enjoin completely the continued prosecution of this suit by Lyons and Rienzi. Arguably, the Approval Order is ambiguous on this point; it purports to enjoin all litigation "against . . . the Buyer of any kind and nature with respect to the Debtors or the Acquired Assets or the operations of the Debtors prior to the Closing Date." Approval Order ¶ 10. Since the claims of Lyons and Rienzi must fail for the reasons set forth below, it need not be conclusively determined whether Marquis qualifies as a "Buyer" pursuant to the injunction; and, as noted above, it is not clear from the present record how Marquis came to be in control of Genmar's assets. In any event, in September 2011, the bankruptcy court expressly authorized Lyons and Rienzi to continue their prosecution of the instant litigation, limiting potential recovery from Genmar to proceeds from applicable liability insurance policies. *See* Order for Relief from Stay ¶ 1, In re Genmar Yacht Group, LLC, No. 09-43556 (Bankr. D. Minn. Sept. 6, 2011), CM/ECF No. 118.

## B. Direct Liability

Neither nor Lyons nor Rienzi have suggested that Marquis could be found directly liable for Genmar's alleged manufacturing misdeeds. Instead, their claims are premised on a theory of successor liability. *See* Rienzi Mem. 10-11; Plaintiff's Opposition to the Motion to Dismiss by Marquis ¶ 2, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Mar. 21, 2012), CM/ECF No. 118 (stating that "[s]ignificant questions exist as to whether Marquis has successor liability to Genmar despite its purchase agreement"). To the extent that Lyons or Rienzi asserts a direct

18

claim against Marquis for its own wrongdoing, summary judgment is granted in Marquis' favor on those claims.

## C. Successor Liability of Marquis

### 1. Effect of Limited Relief from Stay on the Approval Order

Both the Minnesota bankruptcy court's Approval Order and the asset purchase agreement entered into as a result stated explicitly that Marquis would not be liable for any claims predating the bankruptcy petition that were asserted against Genmar. *See, e.g.*, Approval Order ¶¶ 9, 11; Asset Purchase Agreement 6, Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Feb. 6, 2012), CM/ECF No. 101-5.

Raised is the question of the effect in this case of the Approval Order, given the bankruptcy court's subsequent grant of permission, in September 2011, to Lyons and Rienzi to continue their prosecution of this case. *See* Order for Relief from Stay ¶ 1, In re Genmar Yacht Group, LLC, No. 09-43556 (Bankr. D. Minn. Apr. 7, 2011), CM/ECF No. 118. As previously noted, the Approval Order appears by its terms to allow the purchase of Genmar's assets without any of its liabilities—except those explicitly assumed—including tort claims. *See* Approval Order ¶¶ 9, 11. It would have been quite strange for the bankruptcy court to allow Lyons and Rienzi to pursue their claims in the present case while at the same time leaving the asset purchaser a complete defense. In short, the September 2011 order granting relief from the stay might plausibly be read as a narrow modification of the Approval Order's limitation of liability.

This issue need not be decided. For the reasons stated below, even assuming that bankruptcy court's September 2011 order modified the effect of the Approval Order to permit a suit against the manufacturer of the *Brianna* and the purchaser of the manufacturer's assets, Marquis is entitled to summary judgment in its favor.

19

## 2. Successor Liability: Federal Common Law and New York Law

Assuming without deciding that the September 2011 order granting relief to Lyons and Rienzi had the effect of modifying the Approval Order and the asset purchase agreement's disclaimer of liability, summary judgment in Marquis' favor is appropriate pursuant to federal common law principles of successor liability and their New York counterparts.

The common-law principles governing successor liability preclude Lyons and Rienzi, as a matter of federal common law, from recovering against Marquis under the Jones Act—only Lyons presses such a claim—or pursuant to admiralty law. Federal courts are authorized to develop a federal common law of torts respecting claims brought pursuant to the FELA—and, by extension, the Jones Act—and maritime law. *See* Parts III.C.3, III.C.4, *supra*. Pursuant to traditional common-law principles of successor liability, "a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities," *New York v. Nat'l Service Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006), absent the existence of one of the limited exceptions referenced above in Part III.C.2, *supra*. Virtually every jurisdiction utilizes some form of the traditional rule; it has been part of the common law for centuries. *See, e.g.*, *Anspec Co. v. Johnson Controls, Inc.*, 922 F.2d 1240, 1246 (6th Cir. 1991) (citing 1 William Blackstone, *Commentaries* *467-69). Given that historical pedigree, federal common law, in the context of the present case, incorporates the traditional rule and its exceptions.

Lyons and Rienzi rely in their moving papers on the exceptions made to the traditional rule for de facto mergers and for cases in which the purchasing corporation is the "mere continuation" of the seller. *See* Rienzi Mem. 11-14. Neither of these exceptions to the traditional rule—which are "so similar that they may be considered a single exception," *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 n.3 (2d Cir. 2003)—is availing here.

20

The Court of Appeals for the Second Circuit has succinctly summarized the traditional rule regarding the de facto merger exception as follows: "To find that a *de facto* merger has occurred there must be a continuity of the selling corporation, evidenced by the same management, personnel, assets and physical location; a continuity of stockholders, accomplished by paying for the acquired corporation with shares of stock; a dissolution of the selling corporation, and the assumption of liabilities by the purchaser." *Arnold Graphics Indus., Inc. v. Indep. Agent Ctr., Inc.*, 775 F.2d 38, 42 (2d Cir. 1985) (bracketing omitted). There is no suggestion in the record that Marquis "acquired" Genmar as a going concern, or that it did so with stock. The only record evidence on this point, the asset purchase agreement, indicates that Marquis paid cash for some, not all, of Genmar's assets. *See* Asset Purchase Agreement §§ 1.2, 2.1(b), Lyons v. Rienzi & Sons, Inc., No. 09-CV-4253 (E.D.N.Y. Feb. 6, 2012), CM/ECF No. 101-5. Marquis expressly declined to assume all of Genmar's liabilities; it is also apparent from the record that J&D Acquisitions, the company that acquired Genmar's assets, had substantially different shareholders than Genmar's parent. *See* Rienzi 56.1 Stmt. ¶ 7. As a result, this exception provides Lyons and Rienzi no assistance.

The continued existence of Genmar as a bankrupt entity precludes the claims of Lyons and Rienzi asserted pursuant to the exception made for the continuation of a going business. *See, e.g.*, *New York v. Nat'l Servs. Indus., Inc.*, 352 F.3d 682, 685 (2d Cir. 2003); *Wensing ex rel Wensing v. Paris Indus.—N.Y.*, 558 N.Y.S.2d 692, 694 (N.Y. App. Div. 1990).

For substantially the same reasons, Rienzi's breach of warranty claims are barred by New York's common-law rules governing successor liability claims. Any defense potentially available to Marquis premised on the existence of the forum selection clause in the warranty provided by the *Brianna*'s manufacturer has not been raised and need not be considered.

21

## V.     Conclusion on Motion for Summary Judgment

The court recognizes the general federal policy of protecting injured seafarers, which assumes that money will be sufficient to compensate them and contribute to their cure. There is no need to consider here whether a suit against Staten Island premised on putative design and manufacturing defects would be successful—assuming a finding of liability on the part of Rienzi—were Rienzi to lack sufficient assets and insurance coverage. Rienzi is not without assets and insurance sufficient to protect plaintiff, a seafarer.

Summary judgment is granted in favor of Marquis. No costs or disbursements.

## VI.    Future Proceedings

This litigation shall proceed as follows.

The claims asserted against third-party defendants Staten Island and Carver Boat Corporation, LLC—as Genmar was known before changing its name—are dismissed. No theory of liability on the part of Staten Island, the company that purchased the *Brianna* from the manufacturer before selling it to Rienzi, has been propounded. Carver Boat Corporation, LLC is dismissed as a defendant since it and Genmar are one and the same. Any claims asserted against anonymous defendants are without merit and are dismissed.

Remaining in this litigation as parties are (1) Lyons, the original plaintiff; (2) Rienzi, the original defendant; (3) and Genmar, the manufacturer of the *Brianna*, to the limited extent that it is protected by insurance.

Jury selection in this case will commence on May 21, 2012 at 9:30 a.m. Trial will begin the following day.

All *in limine* and other outstanding motions will be heard on May 11, 2012, at 10:00 a.m. By May 4, 2012, the parties will exchange and provide to the court (1) witness lists and summaries of proposed testimony; (2) marked documents and lists of exhibits; (3) experts'

22

reports, if expert witnesses are to be called; and (4) proposed jury charges. *Daubert* hearings, if requested, will be held on May 11. Any further dispositive motions will be heard on that date.

In the interim, the case is respectfully referred to the magistrate judge for mediation or other settlement procedures.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: April 12, 2012
       Brooklyn, New York

23